Our next case is in Re Edward Tobinick. Mr. Hall and I'll pronounce your name correctly you have 15 minutes and if I guess you there's no no rebuttal here so it's 15 minutes well I'd like to talk about two topics the first one being that O market did not possess the invention claim in the interference at the time that it's PCT application was reserved five minutes to speak about a second topic which is the problem that all marker had the day the patent office declared two different interferences one in which it was the junior party against Lee I'd like to define some terms just to get started claims use the term nerve condition mediated by nucleus pulposus nucleus pulposus is a cellular material that comes out of a herniated disk and it impinges on surrounding nerve tissue and causes pain once by two mechanisms one is simple pressure and the other is that it has a pro it releases a protein called TNF which hurts somewhat like the way hot sauce hurts but it also causes inflammation and the immune system reacts to inflammation cellular leukocytes will find that area and they will get involved releasing cytokines including more TNF and I just like to also point out in the record that the term mediate is defined on page a 4746 so just to state it simply this invention is about treatment of back pain by localized application of an antibody that binds TNF my brief talks about all markers series two experiments in which he took an antibody mixed it with nucleus pulposus and put it on the exposed nerves of a pig this was a model for epidural treatment that paper is called all marker 1998 and those experiments ended up in the priority documents and in the PCT application the series to experiments failed and there's a lot of material in the PCT saying so and drawing conclusions and what I just want to explain what they were trying to get at in that paper they had not no one had reached the conclusion yet that TNF is the only bad actor there were other cytokines and no one had reached the local treatment works at all systemic of course is preferred for most medical treatments so what all marker 90 1998 so the the board found that the descriptions of the series to results show that the inventors understood the therapeutic value or the therapeutic potential you are doing that they did not explain why the board erred in that in that determination well the board erred by reading the conclusion sentence of that paper as broadly and close encompassing all of the different molecules that they had used the systemic the doxycycline broad-spectrum inhibitors of all cytokines and the antibody but when you actually read it with understanding you can see that they're really saying only the broad-spectrum the doxycycline is what worked the others do not work that's why they said inhibiting TNF and related substances what they mean is cytokines and we have expert testimony from dr. Weinberger from dr. Richardson from dr. Clark saying that's exactly what this means the other side was the board relied on dr. Anderson who we complained was not being fair not being truthful and then they said well even if dr. Anderson's testimony isn't accurate or reliable we can read it for ourselves and so they read that for themselves but if I could just point out that a subsequent paper by all marker and Aoki and it's in the record at 2845 I quoted in the brief it was not possible to draw any conclusion conclusion regarding which of these cytokines might be directly involved that's talking about the old marker 1998 and the series 2 and it's a factual question yeah and so the question is whether there's substantial evidence to support the board's finding right I think there is not because they interpreted it for themselves and they discounted our expert testimony by saying that they found a contradiction between two of the experts and therefore they didn't need to listen to dr. Weinberger but when you look at the contradiction they point to there's no contradiction and I discussed that in the brief they're talking about two totally different things and we disagree with you about your argument with respect to dr. Anderson's testimony and find that the board did not err by considering that evidence that is there substantial evidence to support the board's finding it's wrong it's just flat wrong and if you look at the question is there substantial evidence I would say no it's so wrong that and and if you look at dr. Anderson's treatment of that area he uses ellipses he he puts words in that actually aren't there and he's just changing the meaning that the first time this case was on appeal it was a very similar situation where dr. Anderson was changing the meaning of the written record and this court found there was no substantial evidence this time you know we have the same situation and and if I could just point to some of the statements in the PCT application which show that the series two didn't work on page a to six nine nine talking about possibilities for how do you treat back pain one may therefore also consider the possibility of a selective blocker of TNF may not be sufficient to effects and that simultaneous block of other synergistic substances is necessary as well they have not come to the conclusion that the TNF alone was the important thing to block and it's also important to realize that even if you have decided it's TNF you still have to know whether it's the local TNF coming from nucleus pulposus that is causing all the pain or is that attracting immune cells from the blood and which has more TNF and that's what they say in the PCT in the next paragraph the third explanation could be that the amount of TNF in the nucleus pulposus may well be enough to start the cascade locally in the nerve root causing then aggregation and recruitment of systemic leukocytes however it is these leukocytes that have the major content of TNF and that systemic treatment in a sufficient dose is necessary to block the contribution from these leukocytes and thereby also blocking the events leading to nerve injury so what about the disclosure a 2698 where it says the lack of effects in certain animals could be based simply on the amount of antibodies in relation to the TNF that's right they didn't have a solution they didn't have a result they are speculating about what might have gone wrong and so there was it could not be verified experimentally and they're thinking about what could be done what could explain it but ultimately you can see in the PCT they never answered that question and they're still wondering whether it's TNF or the other cytokines and whether it needs to be systemic treatment to block like I said necessary this is sufficient dose systemic treatment and sufficient necessary so he did the experiment he got a result that misled him and left him thinking that something else and you can see that in the initial claims then they by the time the PCT answered entered the national stage they saw dr. Tobin expat an application saw what he was doing with local administration of TNF inhibitors and said well I did that experiment that series too so I should get that invention but the series to didn't work he didn't say it worked he didn't think it worked he did many Omar could did many experiments later they were all systemic never repeated this it was basically abandoned until they saw Tobin exclaims then they got that patent allowed and then Tobin and copied those claims to get into this interference you didn't mention that you were going to address the issue issues you raise with respect with inequitable conduct yeah are you are you taking those back are you conceding no no I'd like to discuss that seems to me that what you point to as inequitable conduct it's just they're just mere differences of opinion well what dr. Cohen said can I ask this procedurally you filed a motion for permission to put on an inequitable conduct case that's correct you have to I don't just tell me is have you essentially submitted your the case you would make in support of inequitable conduct not not the evidence itself it was an outline of what the evidence would show and what the arguments are so you know so I have declarations by two experts using the word perjury in this context but those were have not been of record yet and if the board was right about obviousness invalidity of your patent claims why is it necessary to reach this question well the I understand you could test the premise I'm trying to do you presented a lot of issues and part of the challenge at least for me here has been to understand what the logical relationship among the various issues is or whether one like that one I mentioned might be dispositive if it went against you well the issue of who invented first is really what I was talking about with series two I want to show that on the merits to connect should win and secondly why does why does it matter if your claims in invalid the claims would be valid if if the series if PCT were properly interpreted and series two was understood to be a failure that did not give them possession of the invention in other words their local claims would be new matter and Tobin would win so the the inequitable conduct issue also goes to the reliability of Anderson in this case not just because they both said the same ridiculous thing if we find if we find that the board was correct in its determination concerning inventorship does the rest of your case fall I don't understand the use of the term you mean who was first correct does your case fall if if we say that the board was correct if we find that the board was we affirm on that is on the merits yes yes okay do you know why all markers not here today the well I think that that they are worried that you would ask them questions like well why isn't the Lee application prior art penetration prior art and how would you distinguish it because it shows TNF inhibitors treating CNS conditions which means spinal cord conditions and one thing to understand about all markers position in the beginning of all this is that even though Tobin it has only local treatment with TNF has systemic claims using non-specific inhibitors as well as local claims that they basically copied from seeing Tobin so so it's not as if something has been settled or anything like that no why they wouldn't participate in the appeal at all no that's right they withdrew because they're in an untenable position at least that's my supposition that you know I mean basically the way their past still exists their patents would have been canceled already but for the fact that dr. Cohen said essentially the nucleus pulposus does not mediate any pathologies or conditions of the spinal cord and that's absurd and they were trying to preserve their systemic claims for treating nucleus pulposus mediated conditions and their claim they would basically what they were trying to do was conceptually add a limitation to the claim such that the nucleus pulposus would only affect the peripheral nervous system which would be the nerve roots coming out here the other side didn't show up yeah no breeze they're not here today how should we treat that and what's the legal basis for your answer I think it should be treated as an unopposed my brief should be treated as an unopposed brief that's I mean I can't and what's the legal basis for that we don't have a default type provision in our rules you know the the solicitor was invited to join and he did not intervene without explanation I think although I can say I was talking to people about what happens in situations like this and what does it mean and it means that they felt the board had a say the board had their say and just let it go with that okay Mr. Hall I think we understand your argument thank you very much